IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TREVOR L. FISHER                                                                              PLAINTIFF

vs.                                   Civil No. 2:11-cv-02236

MICHAEL J. ASTRUE                                                   DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Trevor L. Fisher ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 5.[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**I.**     **Background:**

Plaintiff protectively filed his disability applications on July 20, 2010.[2] (Tr. 11, 149-154). In these applications, Plaintiff claims to be disabled due to bipolar disorder, anxiety, depression, and

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ____" The transcript pages for this case are referenced by the designation "Tr."

[2] Plaintiff previously filed an application for disability on June 11, 2008 which was granted in a partially favorable decision. (Tr. 74-84). Plaintiff was awarded disability benefits beginning on January 1, 2006 and ending on June 25, 2009.

post- traumatic stress disorder. (Tr. 207). Plaintiff alleges an onset date of September 1, 2009. (Tr. 207). These applications were denied initially and again on reconsideration. (Tr. 88-91).

Thereafter, on October 27, 2010, Plaintiff requested an administrative hearing on his applications, and this hearing request was granted. (Tr. 108-122). Plaintiff's administrative hearing was held on Feburary 16, 2011 in Fort Smith, Arkansas. (Tr. 33-69). Plaintiff was present and was represented by Fred Caddell at this hearing. *Id.* Plaintiff, a witness for Plaintiff, and Vocational Expert ("VE") Sarah Moore testified at this hearing. *Id.* As of the date of this hearing, Plaintiff was thirty-three (33) years old, which is defined as a "younger person" under 20 C.F.R. § 416.963(c) (SSI) and 20 C.F.R. § 404.1563(c) (DIB). (Tr. 38). Plaintiff also testified at this hearing that he had received his high school diploma and completed two years of college. (Tr. 39-40).

On March 15, 2011, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (Tr. 8-19). In this decision, the ALJ determined Plaintiff met the insured status requirements of the Act through September 30, 2014. (Tr. 13, Finding 1). The ALJ determined Plaintiff had the following severe impairment: bipolar disorder. (Tr. 13, Finding 3). The ALJ also determined Plaintiff's impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 13-15, Finding 4).

In this decision, the ALJ evaluated Plaintiff's subjective complaints and determined his RFC. (Tr. 15-17, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found his claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform the following:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels,

>but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple, routine, and repetitive tasks wherein the complexity of tasks is learned and performed by rote. The clamant can respond appropriately to supervision that is simple, direct, and concrete; to co-workers; and to usual work situations, but can have no contact with the general public. The claimant can perform low-stress work (defined as occasional decision making and occasional changes in work place settings).

*Id.*

The ALJ evaluated Plaintiff's Past Relevant Work ("PRW") and determined Plaintiff was unable to perform any of his PRW. (Tr. 17, Finding 6). The ALJ evaluated whether Plaintiff retained the capacity to perform other work existing in significant numbers in the national economy considering his age, education, work experience, and RFC. (Tr. 18-19, Finding 10). The ALJ heard testimony from the VE on this issue. *Id.* Based upon that testimony, the ALJ determined Plaintiff retained the capacity to perform the representative requirements of unskilled, medium occupations such as dishwasher with 373,000 such positions in the national economy and 3,000 in Arkansas; hand packager with 63.700 such positions in the national economy and 500 in Arkansas; and store laborer with 32.672 such positions in the national economy and 990 in Arkansas. (Tr. 18). Based upon this finding, the ALJ determined Plaintiff had not been under a disability, as defined by the Act, from his alleged onset date of September 1, 2009 through the date of the ALJ's decision or through March 15, 2011. (Tr. 19, Finding 11).

Thereafter, Plaintiff requested the Appeals Council's review of the ALJ's unfavorable decision. (Tr. 5-6). On November 3, 2011, the Appeals Council declined to review this unfavorable decision. (Tr. 1-3). On December 7, 2011, Plaintiff filed the present appeal. ECF No. 1. The Parties consented to the jurisdiction of this Court on December 23, 2011. ECF No. 5. Both Parties have filed appeal briefs. ECF Nos. 11-12. This case is now ready for decision.

**II.     Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

### III.    Discussion:

In his appeal brief, Plaintiff claims the following: (A) the ALJ erred by finding his impairments did not meet the requirements of Listing 12.04 for Affective Disorders; (B) the ALJ's RFC determination is not supported by substantial evidence in the record; and (C) the ALJ's assessment of his mother's third-party statement was not accurate. ECF No. 11. In response, Defendant argues substantial evidence supports the ALJ's Listing determination, the ALJ's RFC determination, and the ALJ's credibility determination. ECF No. 12. Defendant also argues the ALJ properly fulfilled his duty of fully and fairly developing the record. *Id.* The Court will evaluate each of Plaintiff's arguments for reversal.

A.  **Listing 12.04 for Affective Disorders**

Plaintiff claims the ALJ erred by finding his impairments did not meet the requirements of Listings 12.04(A)(1) (Depressive Syndrome), 12.04(A)(2) (Manic Syndrome), and 12.04(A)(3) (Bipolar Syndrome). ECF No. 11 at 13-14. To meet the requirements of any of those three listings, Plaintiff must demonstrate his impairments also resulted in *two* of the following: (1) marked restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.

1.  **ALJ's Findings**

In his opinion, the ALJ first found Plaintiff only had a mild restriction in his activities of daily living. (Tr. 14). Plaintiff does not dispute this finding. ECF No. 11 at 13-14. Second, the ALJ found Plaintiff had moderate difficulties in social functioning. (Tr. 14). Plaintiff disputes this finding and claims he suffers from a marked restriction in this domain. ECF No. 11 at 13-14. In finding Plaintiff suffered from only "moderate difficulties," the ALJ stated he relied upon Exhibits B3E (Function Report - Adult) and B5E (Disability Report - Adult). (Tr. 14). In Exhibit B3E, Plaintiff stated he was able to share an apartment with a roommate (Tr. 183), shop a "couple times a week" for "food, clothes, and nasesities [necessities]" (Tr. 186), and spend time with others "daily or every couple of days" (Tr. 187). In Exhibit B5E, Plaintiff reported having a history of dealing with the public, including a six-year work history in retail. (TR. 208). Based upon this information, the Court finds the ALJ did not err in finding Plaintiff only had "moderate difficulties" in social functioning.

Third, the ALJ found Plaintiff only had "moderate difficulties" in concentration, persistence, and pace. (Tr. 14). Plaintiff also disputes this finding and claims he actually has marked difficulties

6

in this domain of functioning. ECF No. 11 at 13-18. In finding Plaintiff only suffered from only "moderate difficulties" in this domain of functioning, the ALJ based his decision upon the findings in Exhibit B3E[3] (Function Report - Adult) and Exhibit B4F (Mental Residual Functional Capacity Assessment). In Exhibit B3E, Plaintiff reported the following daily activities: "hygene [hygiene], may eat breakfast, take dog out, check in with parents, watch news–check weather, pick up apartment, watch t.v. or listen to music nap or rest for 2-3 hours daily." (Tr. 183). Plaintiff also reported cleaning the house daily and doing laundry once a week. (Tr. 185). Further, while Plaintiff did report having a short spans of attention at a time, Plaintiff also reported he was able to generally finish tasks that he started. (Tr. 188).

Further, as additional evidence, Exhibit B4F also supports the ALJ's findings. This is a mental RFC assessment from a non-treating, non-examining physician. (Tr. 304). As such, these findings alone may not provide substantial evidence supporting the ALJ's RFC determination, but they are certainly proper for the ALJ to consider as supplemental evidence. *See Shontos v. Barnhart,* 328 F.3d 418, 427 (8th Cir. 2003). Notably, in this assessment, Plaintiff was only found to have moderate limitations in concentration, persistence, and pace. *Id.* Based upon this information, the Court finds the ALJ properly determined Plaintiff only had "moderate difficulties" in this domain of functioning. Fourth and finally, the ALJ found Plaintiff had no episodes of decompensation of an extended duration. (Tr. 14). Plaintiff does not dispute this finding. ECF No. 11 at 13-14.

### 2. Plaintiff's Medical Evidence

To demonstrate he does meet the requirements of Listings 12.04(A)(1) - (A)(3) and

---

[3] The ALJ actually stated he was relying upon B5E. (Tr. 15). However, it appears the ALJ referred to the improper exhibit. Based upon his findings, it appears he intended to refer to B3E. Thus, this Court will only reference that exhibit.

demonstrate he suffers from at least two of the restrictions referenced above, Plaintiff relies heavily upon medical source statements from Ms. Susan Smith dated July 29, 2009 (Tr. 368-370) and January 26, 2011 (Tr. 396-398). ECF No. 11 at 13-14. In his opinion, the ALJ considered Ms. Smith's findings but discounted them because those findings were inconsistent with her treatment notes. (Tr. 16-17). Specifically, the ALJ stated, "Ms. Smith's treatment notes show that she consistently found the claimant's memory intact and concentration, judgment, and insight to be good. . . . Consequently, I do not find Ms. Smith's assessments to be consistent with her recorded observations, or with the APN's observations and give them no weight." *Id.*

Upon review, the Court finds the ALJ correctly found Ms. Smith's findings were inconsistent with her treatment records and properly discounted the severe restrictions Ms. Smith placed on Plaintiff. Based upon the record, it appears Ms. Smith, LPC (Licensed Professional Counselor) treated Plaintiff from his alleged onset date through the date of the ALJ's decision. (Tr. 288-296, 297-300, 325-333, 395-398, 399-401). It is important to first review those treatment records in order to determine whether they are consistent with the limitations Ms. Smith placed on Plaintiff in her medical source statement.

For the relevant time period, Plaintiff's treatment from Ms. Smith began on November 12, 2009 and lasted until January 26, 2011. On November 12, 2009, Plaintiff was evaluated by Ms. Smith. (Tr. 288). During this examination, Ms. Smith found the following: "Client presented for counseling today with good mood but tired. He stated that he is watching his 2.5 old nephew 40 hours a week. He finds it stressful but also fun at times. He stated that he does try to get out of the house daily and walk for exercise. Otherwise, he has no new problems to report. He stated that he is using meds as prescribed with no problems." *Id.* On the same date, Plaintiff presented to Ms.

8

Slavens, APN (Advanced Nurse Practitioner) for medication management, and she noted Plaintiff was "taking medication as prescribed." (Tr. 289-290). Ms. Slavens also noted that Plaintiff's "[m]edication [was] effective for targeted symptoms." *Id.* Plaintiff was advised to return for a follow-up appointment in one month. (Tr. 288).

Approximately three months later, on February 11, 2010, Plaintiff returned for his follow-up appointment. (Tr. 291). During this appointment, Plaintiff reported having an "antsy nervous mood/affect." *Id.* It appears this anxiety was primarily related to his disability application and (at that time) his upcoming disability hearing. *Id.* Indeed, on the same date, despite his heightened anxiety, Plaintiff reported he felt his medications were "effectively controlling his symptoms." (Tr. 292). Plaintiff also reported he believed his anxiety would "lessen" after the disability hearing. *Id.* Plaintiff was again advised to return in one month for follow-up care. (Tr. 291).

Again, approximately three months later, on May 6, 2010, Plaintiff returned to Ms. Slavens for medication management. (Tr. 294-295). During this appointment, Plaintiff reported that he "feels that the medications are effective for his symptoms and [are] without side-effect." (Tr. 294). Ms. Slavens also stated Plaintiff "sees no indication for change or adjustment in medication." *Id.* On July 8, 2010, two months later, Plaintiff sought follow-up care with Ms. Susan Smith, LPC. (Tr. 296). During that appointment, Ms. Smith reported Plaintiff suffered from mild symptoms: "Client presented for counseling today with fair mood/affect. He talked about his continued difficulty with mood changes. He states that he has times of depression and then hypomania." *Id.* Ms. Smith reported Plaintiff's "overall progress" as "positive." *Id.*

On August 5, 2010, Plaintiff presented to Ms. Slavens for medication management. (Tr. 299-300). Ms. Slavens noted Plaintiff "feels the medications are effective for his symptoms" and

9

reported "[h]e's [Plaintiff's] without side-effects." (Tr. 299). On November 4, 2010, Plaintiff sought treatment with Ms. Smith, and Ms. Smith reported the following: "Client presented for counseling today with fair but somewhat flat mood/affect. He stated that he continues to have good and bad days. He stays home most days without much social interaction outside of his family. He spends his time doing household duties and resting." (Tr. 327). On the same date, he was evaluated by Ms. Slavens and was found to "be stable without side effect from medication." (Tr. 328). Ms. Slavens also reported planning to "continue without change," and she reported Plaintiff was "agreeable with this plan." *Id.*

Despite these relatively mild findings and the fact Plaintiff's symptoms were reportedly well-controlled with his medication, on January 26, 2011, Ms. Smith completed a medical source statement (mental) regarding Plaintiff's ability to do work-related activities and found Plaintiff suffered from severe work limitations. (Tr. 396-398). In this statement, Ms. Smith found Plaintiff has extreme mood changes which are "unpredictable," and his anxiety "significantly impairs his ability to function in the outside world." (Tr. 398). Ms. Smith stated, "He has such difficulty being around others that he must modify his schedule to go out when the least amount of people will be around." *Id.* Ms. Smith found Plaintiff's mood changes "are controlled somewhat," but "he continues to have impairment in his daily life management skills." *Id.* Ms. Smith also found Plaintiff suffered from marked limitations in several areas, including in his ability to carry out detailed instructions, in his ability to maintain attention, in his ability to perform activities on schedule, and in his ability to work with others. *Id.* However, as outlined above, because these severe restrictions are not supported by Ms. Smith's treatment notes, the ALJ was not required to adopt them and find Plaintiff met the requirements of Listing 12.04.

**B.     RFC Determination**

Plaintiff claims the ALJ improperly evaluated his RFC. ECF No. 11 at 15-18. Specifically, Plaintiff claims the ALJ's RFC determination is not supported by substantial evidence in the record. *Id.* Plaintiff claims there is no "medical evidence that addresses Plaintiff's ability to function in the workplace," and the ALJ erred by failing to order additional evidence (such as a consultative examination) to evaluate whether Plaintiff's limitations in the workplace. *Id.*

As outlined above, there a number of treatment from Plaintiff's counselor and nurse practitioner included in the record. (Tr. 288-296, 297-300, 325-333, 395-398, 399-401). The ALJ also had the benefit of Plaintiff's statements regarding his impairments, both in the documents he filed with SSA and in the statements he made at the administrative hearing in this matter. (Tr. 33-69, 183-191). Finally, the ALJ included in the record reports from state agency consultants. (Tr. 304-306, 318). Certainly, while their findings alone do not generally constitute substantial evidence supporting a disability determination, it was entirely proper for the ALJ to consider that evidence. Finally, even if the ALJ did not fully and fairly develop the record as Plaintiff claims, Plaintiff has still not shown he was prejudiced by this failure. *See Onstad v. Shalala,* 999 F.2d 1232, 1234 (8th Cir. 1993) (holding "absent unfairness or prejudice, we will not remand"). Thus, this case need not be remanded on this basis. *Id.*

**C.     Third Party Evidence**

Plaintiff claims the ALJ improperly evaluated the third-party statement submitted by his mother. ECF No. 11 at 16-17. In his opinion, the ALJ considered this report and found it to be "generally credible." (Tr. 17). The ALJ also found that "her report suggests that the claimant is functioning fairly well if somewhat limited with regard to social contact." *Id.* Plaintiff argues with this finding and claims his "mother's statement does indeed support disabling limitations." ECF No.

11

11 at 16-17.  Plaintiff claims she also reported Plaintiff "needed a reminder to shave, and most of the time he was good about showers (indicating that there were times he would not shower), he didn't have much of an appetite; sometime we remind him to get dressed; he keeps pajamas and slippers on . . . ."  ECF No. 11 at 17.  Plaintiff claims these findings all indicate he is disabled.

In assessing the Plaintiff's RFC, the ALJ is required to consider the observations of third parties.  *See Zeiler v. Barnhart,* 384 F.3d 932, 936 (8th Cir. 2004).  As with any other piece of evidence, however, the ALJ is not required to adopt all of those findings.  Here, Plaintiff disputes the ALJ's characterization of his mother's report.  However, even if the ALJ did not properly characterize all of her statements, as outlined above, the ALJ still properly based his decision upon substantial evidence in the record.  Accordingly, even if the ALJ erred in this matter, there is no need to reverse this case.

### IV.     Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 21st day of November 2012.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE